IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00624-REB-BNB

JAMES PAGE,

Plaintiff,

v.

MARK FURMER,
JUDY BULLARD,
GARY GOLDER,
MICHAEL GILBERT, and
ANTHONY A. DECESARO,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on the **State Defendants' Motion for Summary Judgment** (the "Motion"), filed by defendants Farmer,[1] Bullard, Golder, and Gilbert on August 24, 2005. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the defendants on Claims One and Two; that the Court decline to exercise supplemental jurisdiction over Claim Three; and that Claim Three be DISMISSED WITHOUT PREJUDICE.

## I.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil

---

[1]The defendants refer to defendant Mark Furmer as Mark Farmer.

Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Id. at 324.

## II.  UNDISPUTED MATERIAL FACTS[2]

1.  The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF").  *Plaintiff's Answer to Defendant"s* [sic] *Motion for Summary Judgement* (the "Response"), thirteenth consecutive attachment, ¶ 1.

---

[2]The plaintiff's statement of facts is replete with conclusory statements that are not supported by evidence.  Therefore, the undisputed material facts are taken directly from the plaintiff's evidence, particularly his affidavit, and the defendants' statement of "Material, undisputed or admitted facts" with supporting evidence.

2.   On October 23, 2003, the plaintiff received an initial dental examination at the Denver Regional Diagnostic Center.  Id. at ¶ 4.  During the examination, the dentist noted that the plaintiff had multiple decayed teeth.  Id. at ¶ 5.  The dentist told the plaintiff that he needed dentures.  Id.  He explained the constraints of the DOC's Administrative Regulation ("AR") 700-04 with regards to receiving dentures.  Id.  He instructed the plaintiff to submit a kite to the dental department upon arrival at SCF.  Id.

3.   Inmates must submit a kite in order to schedule each appointment with a dentist.  Id. See also Motion, p. 5, ¶ 8 and Attachment 2 to Exhibit 1, p. 2.

4.   The plaintiff submitted a kite to the SCF dental department on November 12, 2003. His initial appointment was scheduled for February 27, 2004.  Response, thirteenth consecutive attachment, ¶ 6.

5.   On February 23, 2004, the plaintiff submitted a kite for an abscessed tooth.  Id. at ¶ 7. On February 24, 2004, staff from the plaintiff's living unit reported that he was in pain from what appeared to be an infected tooth.  Motion, p. 4, ¶ 1 and Exhibit 1, ¶ 6.  On February 24, 2004, SCF staff dentist, Dr. Mark Farmer, examined the plaintiff and found that he had multiple areas of gross decay and abscessed teeth resulting from many years of neglect.  Motion, p. 4, ¶ 2 and Exhibit 1, ¶ 6.  Dr. Farmer prescribed antibiotics for the plaintiff.  Motion, p. 4, ¶ 3 and Exhibit 1, ¶ 6.

6.   On February 27, 2004, Dr. Farmer extracted the plaintiff's abscessed teeth and assessed the plaintiff's dental needs.  Motion, p. 4, ¶ 4 and Exhibit 1, ¶ 7; Response, thirteenth consecutive attachment, ¶ 8.  Dr. Farmer informed the plaintiff that dentures were a treatment option.  Motion, p. 4, ¶ 4 and Exhibit 1, ¶ 7.

3

7.   Prior to initiating the process of extracting teeth and creating dentures, the plaintiff was informed of the requirements for prosthetics as set down in AR 700-04.  *Motion*, p. 4, ¶ 5 and Exhibit 1, ¶ 8.  AR 700-04 provides:

> Prosthetic cases will not be initiated for offenders with less than 12 months remaining to discharge or next parole hearing.  This time frame will be periodically reviewed by the chief of dental services who may reduce it through dental service guidelines.  Offenders with extenuating circumstances, who may never qualify due to periodic parole hearings, will be evaluated for exception to the 12 month time frame on a case-by-case basis by the chief of dental services.

*Motion*, p. 4, ¶ 6 and Attachment 2 to Exhibit 1, p. 3, ¶ 6.

8.   AR 700-04 was created in order to police DOC resources.  Prior to instituting AR 700-04, requests for prosthetics were being granted and government funds were being utilized to make prosthetics for inmates who were discharged, paroled, or otherwise left the system before the dentures could be completed and delivered.  *Motion*, p. 5, ¶ 7 and Exhibit 2, ¶ 10.

9.   The plaintiff was seen by Dr. Farmer on April 8 and 21, 2004.  His teeth received a deep scaling cleaning to improve the gingival response.  *Motion*, p. 5, ¶ 10 and Exhibit 1, ¶ 9; *Response*, thirteenth consecutive attachment, ¶ 10.  On April 28, 2004, the plaintiff was seen by Dr. Farmer.  Dr. Farmer extracted tips from areas where the plaintiff had previously lost teeth. *Motion*, p. 5, ¶ 11 and Exhibit 1, ¶ 10; *Response*, thirteenth consecutive attachment, ¶ 11.

10.   On June 29, 2004, the plaintiff executed a consent form to remove infected and abscessed teeth.  Four teeth extractions were performed.  Dr. Farmer reminded the plaintiff of the time requirements set out in AR 700-04.  *Motion*, p. 5, ¶ 13 and Exhibit 1, ¶ 11; *Response*, thirteenth consecutive attachment, ¶ 12.

11.   On June 29, 2004, the plaintiff sent a kite to dental for additional extractions. *Response*, thirteenth consecutive attachment, ¶ 13.  The kite was received on July 1, 2004, and the extractions were performed on July 28, 2004.  Id.

12.   On July 4, 2004, the plaintiff submitted a kite requesting a dental appointment.  The DOC increased the dental co-payment for inmates from $.50 to $5.00 in July 2004.  On July 28, 2004, the plaintiff requested that the dental clinic cancel his dental appointment.  *Motion*, p. 6, ¶¶ 15-17; Exhibit 1, ¶ 12 and Attachments 4, 6.

13.   No additional kites requesting dental care were received from the plaintiff from July 28, 2004, through September 21, 2004.  *Motion*, p. 6, ¶ 18; Exhibit 1, ¶ 13 and Attachment 7; Exhibit 2, ¶ 12.

14.   On August 18, 2004, the plaintiff filed a Step 1 grievance stating that it was very hard to eat without his teeth and that he needed dentures in order to eat.  He requested that his remaining teeth be pulled and that his dentures be made.  *Motion*, p. 6, ¶ 19; Exhibit 1, ¶ 14; and Attachment 8; *Response*, thirteenth consecutive attachment, ¶ 14.  On September 1, 2004, Dr. Farmer responded to the grievance stating that the plaintiff had a lot of bad teeth that needed to be extracted before dentures could be made and to please keep submitting kites so that the dental services could be continued.  He also informed the plaintiff that the dentures would be made only if doing so did not violate AR 700-04.  *Motion*, p. 6, ¶ 20; Exhibit 1, ¶ 14; and Attachment 8; *Response*, thirteenth consecutive attachment, ¶ 15.

15.   The plaintiff filed a Step 2 grievance on September 15, 2004, demanding that his dental work be completed.  *Motion*, p. 7, ¶ 23; Exhibit 1, ¶ 16; and Attachment 10; *Response*, thirteenth consecutive attachment, ¶ 16.  On September 20, 2004, Dr. Farmer responded to the

plaintiff's grievance stating that the plaintiff did not currently have a kite in the system and that

dental appointments are only scheduled from kites.  Dr. Farmer then noted that the dental

department received a kite from the plaintiff on September 21, 2004.  *Motion*, p. 7, ¶ 24; Exhibit

1, ¶ 16; and Attachment 10; *Response*, thirteenth consecutive attachment, ¶¶ 18-19.

16.    The plaintiff filed a Step 3 grievance on September 27, 2004, complaining of the

delay in his dental care.  *Motion*, p. 7, ¶ 26; Exhibit 1, ¶ 18; and Attachment 11, p. 1; *Response*,

thirteenth consecutive attachment, ¶ 21.  Anthony DeCesaro, Grievance Officer, responded to the

grievance by stating the following:

> In review of this matter I have found that unfortunately you do not
> currently meet the qualifications for dentures under the AR.  You
> need at least twelve months prior to parole hearing, before dentures
> will be fabricated.  You were working with dental to achieve this
> goal but you cancelled an appointment in July of last year and
> didn't submit any kites for treatment while most of this grievance
> was pending.  Dental does not schedule appointments from
> grievances, only from kites.  In this case if you are denied parole in
> August you can re-submit a request for dentures.  I therefore
> cannot recommend any relief in this matter.

*Motion*, Exhibit 1, ¶ 18; and Attachment 11, p. 2.

17.    On September 14, 2004, the plaintiff submitted a letter to Dr. Gilbert, Chief of Dental

Services for the DOC, expressing his concerns.  The letter was forwarded to Judy Bullard,

Clinical Services Administrator at SCF.  *Response*, thirteenth consecutive attachment, ¶ 17.  On

September 27, 2004, the plaintiff sent another letter to Dr. Gilbert expressing his concerns.  Dr.

Gilbert did not respond.  *Response*, thirteenth consecutive attachment, ¶ 20.  On October 18,

2004, Judy Bullard responded to the first letter.  Id. at ¶ 22.

18.   On September 1, 2004, the plaintiff filed a Step 1 Grievance alleging that a correctional officer refused to allow him to go to a dental appointment because he was not on the list of appointments.  *Motion*, p. 6, ¶ 21; Exhibit 1, ¶ 15; and Attachment 9.  On September 13, 2004, Dr. Farmer responded to the grievance and informed the plaintiff that he had been called to the dental department to address his grievance, not for an appointment.  He further informed the plaintiff that dental appointments were not scheduled by filing grievances; the plaintiff had to submit a kite to schedule an appointment.  *Motion*, p. 6, ¶ 22; Exhibit 1, ¶ 15; and Attachment 9.

19.   On September 21, 2004, the plaintiff submitted a kite for a dental appointment.  *Motion*, p. 7, ¶ 25; Exhibit 1, ¶ 17; and Attachment 7.  On November 18, 2004, Dr. Farmer extracted more teeth from the plaintiff.  *Motion*, p. 7, ¶ 27; Exhibit 1, ¶ 19; and Attachments 4, 12.  The plaintiff submitted a kite for dental services on November 24, 2004.  *Motion*, p. 7, ¶ 28 and Exhibit 1, ¶ 20.  The plaintiff was seen on November 28, 2004, for more extractions.  *Response*, thirteenth consecutive attachment, ¶ 24.  On November 18, 2004, the plaintiff submitted a kite to have the impressions made for his dentures.  *Response*, thirteenth consecutive attachment, ¶ 25.  On December 29, 2004, Dr. Farmer evaluated the plaintiff for impressions for his dentures.  *Motion*, p. 7, ¶ 29; Exhibit 1, ¶ 20; and Attachment 13; *Response*, thirteenth consecutive attachment, ¶ 26.  Dr. Farmer requested authorization for dentures from Dr. Gilbert.  *Motion*, p. 7, ¶ 29 and Exhibit 1, ¶ 20.

20.   On January 5, 2005, Dr. Gilbert denied the request for dentures because the plaintiff's August 2005 parole hearing did not meet the guidelines of AR 700-04 and there was no reasonable assurance that the case could be completed before the plaintiff left the DOC system.  Dr. Gilbert did not find any extenuating circumstances which would except the plaintiff from AR

700-04.  The plaintiff would have received his prosthetics if he had not terminated his treatment in July 2004.  *Motion*, pp. 7-8, ¶ 30; Exhibit 1, ¶ 21; and Exhibit 2, ¶ 15.

21.   Dr. Farmer informed the plaintiff that authorization for dentures had been denied, but if he was denied parole in August 2005, he could re-submit a request for dentures. Dr. Farmer further informed the plaintiff that if parole was denied in August 2005, he had the models that were made and ready to send for the prosthetics and that the co-pay for the models would stand, but he would not charge for seating the dentures.  *Motion*, p. 8, ¶ 31 and Exhibit 1, ¶ 21.  The plaintiff asked Dr. Farmer how he was supposed to eat, and Dr. Farmer offered to prescribe a "mechanical soft diet."  The plaintiff explained that he could not have a mechanical soft diet because he is kosher.  Dr. Farmer did not have any other suggestions.  *Response*, thirteenth consecutive attachment, ¶ 29.

22.   If the plaintiff had not interrupted his treatment, his dentures could have been made within the time frame allotted by AR 700-04.  *Motion*, p. 8, ¶ 34 and Exhibit 1, ¶ 24.

23.   On January 5, 2005, the plaintiff sent another letter to Dr. Gilbert expressing his concerns.  He received no response.  He sent a kite to the dental department on January 21, 2005, and did not receive a response.  On February 4, 2005, he received a form letter informing him that this concerns were being forwarded to clinical services at SCF.  *Response*, thirteenth consecutive attachment, ¶¶ 30-33.

24.   The plaintiff was denied parole in July 2005.  *Motion*, p. 8, ¶ 35 and Exhibit 1, ¶ 28; *Response*, thirteenth consecutive attachment, ¶ 34.  He is currently being authorized for his dentures because he now meets the criteria set forth in AR 700-04.  *Motion*, p. 8, ¶ 36 and Exhibit 1, ¶ 28; *Response*, thirteenth consecutive attachment, ¶ 35.  Dr. Farmer began the prosthetic

procedure on August 18, 2005, with the proper authorization.  Dr. Farmer explained that the procedure to complete his dentures could take an additional eight months.  *Response*, thirteenth consecutive attachment, ¶ 35.

25.  Gary Golder, SCF Warden, does not have any direct responsibility for the dental care of any inmate and did not have any knowledge of any matters contained in this lawsuit until after he received the Complaint.  *Motion*, p. 9, ¶ 39 and Exhibit 3, ¶¶ 5-6.

26.  Judy Bullard retired from the DOC on November 30, 2004.  She did not have clinical supervision responsibilities over Dr. Gilbert or Dr. Farmer.  She was not involved in the plaintiff's dental treatment or in any decisions concerning the plaintiff's dental treatment.  *Motion*, p. 9, ¶¶ 40-42 and Exhibit 4, ¶¶ 2, 5-8.

The Complaint alleges three claims for relief based on the facts recited.  Claim One alleges "deliberate indifference," and Claim Two alleges "cruel and unusual punishment."  I construe Claims One and Two to be a claim for violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  Claim Three alleges "medical negligence."  I construe this claim as a negligence claim brought pursuant to Colorado state law.

### III.  ANALYSIS

#### A.  Claims One and Two

Claims One and Two are brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The plaintiff claims that the defendants have refused to provide him with dentures in violation of his Eighth Amendment right to be free of cruel and unusual punishment. A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The following facts are undisputed: (1) under AR 700-04, prosthetic cases will not be initiated for offenders with less than 12 months remaining to the inmate's discharge or next parole hearing; (2) the plaintiff was repeatedly advised of the time constraints of AR 700-04; (3) an inmate must submit a kite in order to schedule each treatment with a dentist; (4) no kites

requesting dental care were received from the plaintiff from July 28, 2004, through September 21, 2004; and (5) if the plaintiff had not interrupted his treatment, his dentures could have been made within the time frame allotted by AR 700-04.  The undisputed facts establish that the plaintiff is responsible for his inability to obtain the dentures, and that there was no deliberate indifference on the part of any defendant.

To the contrary, the undisputed facts establish that the dental department aggressively attended to plaintiff's dental needs by seeing him eleven times in fourteen months.  The plaintiff's pre-existing dental condition was assessed, he was administered antibiotics, root tips were extracted from areas where he had previously lost teeth, his teeth received a deep scaling cleaning to improve gingival response, his infected and abscessed teeth were extracted, and he was evaluated for impressions for dentures.  The plaintiff's claim for deliberate indifference is meritless.

Moreover, an individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).  Respondeat superior is not within the purview of section 1983 liability.  Id.  In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976).  Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official.  Id.

11

It is undisputed that defendant Golder, SCF Warden, does not have any direct responsibility for the dental care of any inmate and did not have any knowledge of any matters contained in this lawsuit until after he received the Complaint.  It is also undisputed that Judy Bullard retired from the DOC on November 30, 2004; she did not have clinical supervision responsibilities over Dr. Gilbert or Dr. Farmer; and she was not involved in the plaintiff's dental treatment or in any decisions concerning the plaintiff's dental treatment.  The plaintiff does not provide any evidence that defendants Bullard and Golder were directly responsible for the alleged constitutional violations.

I respectfully RECOMMEND that Motion be granted insofar as it seeks summary judgment in favor of the defendants on Claims One and Two.

## B.  Claim Three

Claim Three alleges "medical negligence."  I construe this claim solely as a state-law-based tort claim.  This Court may decline to exercise supplemental jurisdiction over the plaintiff's state tort claim when it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because the plaintiff's constitutional claim is without merit, I recommend that the Court decline to exercise supplemental jurisdiction over the remaining state tort claim.

I respectfully RECOMMEND that Claim Three be DISMISSED WITHOUT PREJUDICE.

## IV.  CONCLUSION

I respectfully RECOMMEND that the State Defendants' Motion for Summary Judgment be GRANTED insofar as it seeks summary judgment in favor of the defendants on Claims One and Two.

I further RECOMMEND that the Court decline to exercise supplemental jurisdiction over Claim Three, and that Claim Three be DISMISSED WITHOUT PREJUDICE.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 10, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge